**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Mayford MATHES, Appellee.**

No. 08–88–00316–CV.

Court of Appeals of Texas, El Paso.

May 24, 1989.

Rehearing Denied June 21, 1989.

Michael McKinney, Michael Tighe, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, for appellant.

Ruff Ahders, Ruff Ahders, Associated, Odessa, Elaine Brady, Houston, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

FULLER, Justice.

In a worker's compensation case, the jury answered issues of incapacity in favor of the worker but found he did not give notice, nor show good cause for failure to give notice to the employer within thirty days of the injury. The trial court disregarded the jury's findings on lack of notice and entered judgment for the worker. We reverse and render judgment for the insurance company.

Point of Error No. One asserts that the trial court erred in disregarding the jury finding that the employer did not receive notice of injury within thirty days after the manifestation of the injury.

By Point of Error No. Two, Appellant compensation carrier asserts that the trial court erred in disregarding the jury finding that there was not good cause for failure to notify the employer of the injury within thirty days after the manifestation of the injury.

By Counterpoints of Error Nos. One and Two, the Appellee worker asserts that the trial court should have held, as a matter of law, that notice was properly given and,

therefore, issues on notice and good cause should not have been submitted.

By Counterpoints of Error Nos. Three and Four, the Appellee asserts that the findings of the jury as to lack of thirty days' notice of injury, and lack of good cause for the late notification of injury is so against the great weight and preponderance of the evidence as to be manifestly unjust.

This is an alleged repetitious trauma case filed by an oil field worker that had worked for his employer twenty years and whose employment ended after an operation for a herniated disc.

The jury was properly instructed on the incident, aggravation and acceleration of an existing disease, infirmity or condition. "Injury" was further defined to mean:

> [D]amage or harm to the physical structure of the body occurring as a result of repetitious physical traumatic activities extending over a period of time....

The jury found that Appellee Mayford Mathes received an injury in the course and scope of his employment, resulting in partial incapacity that commenced on November 12, 1986. It also found that the partial incapacity was permanent. The jury found that during the partial incapacity, the Appellee had an average weekly earning capacity of $327.00.

The jury found that Appellee's employer did not have notice of the injury within thirty days of the injury's manifestation and found that Appellee did not have good cause for delay in giving such notice. The trial court entered judgment for the Appellee Mayford Mathes after disregarding the answers of the jury as to the lack of notice, and the lack of good cause for failure to give notice in time.

## FACTS

Appellee Mayford Mathes labored doing general oil field work for the same employer for over twenty years, and like most oil field work it consisted of bending, lifting and climbing. Appellee had suffered bruises and falls during his career which he described as a usual occurrence in the oil fields. Appellee was forty-one years of age and had an eighth grade education. He had been raised in Tennessee and made regular protracted trips back home for visits. He previously had suffered a left knee injury which his employer was aware of. On May 1, 1986, Appellee saw Dr. Coleman with complaints of left leg numbness. His supervisor was aware of this visit before he left for Tennessee. The doctor X-rayed Appellee's lumbar spine and prescribed muscle relaxants. He continued to work until May 28, 1986, when he left on vacation to Tennessee. The employer's insurance clerk was aware of his consulting Dr. Coleman for his leg problem and, in fact, processed the bill it received from Dr. Coleman. It was the employer that elected to process Dr. Coleman's bill under the group policy. Even though the bill contained a charge for X-rays, the employer made no inquiry of the doctor or any investigation as to Appellee's condition. Neither Appellee nor his employer was aware of what is known as an "injury that resulted from repetitious trauma" and that such was compensable under worker's compensation insurance.

Shortly after his arrival in Tennessee, Appellee consulted a chiropractor on June 3, 1986, who attempted to treat him for the same complaints that Appellee had when he last saw Dr. Coleman on May 1, 1986. Appellee was treated by the chiropractor during the months of June, July and August with some good results, but eventually Appellee's condition worsened. He testified that he contacted his employer by calling Bobby Ellis (the vice president) and Carolyn Miller (the insurance clerk) on a regular basis to report on his treatment. Finally, the chiropractor referred the Appellee to a specialist. A myelogram was done confirming a herniated disc. Appellee was operated on for the ruptured disc and was discharged from the hospital on or about September 12, 1986. He testified that some six or seven months before he saw the doctor in May of 1986, he had hurt his back on the job when he fell, hitting his back on a ladder. The pain would come and go. He did not realize the seriousness of his injury until the specialist diagnosed

his herniated disc. His employer sent the insurance forms, but they were the group health forms. However, the Appellee testified he relied on his employer to send the right papers to file his compensation claim. Appellee testified he did not know the difference between worker's compensation forms and group health forms. The employer's insurance clerk indicated that the forms were similar. He returned to Texas in May 1987, thinking that he would still have a job with his employer. He testified he went to the office every morning for two weeks until he was told: "[T]he insurance company did not want to put me back to work." This was the first time that the employer claimed that Appellee advised that his injury was work related. The Appellant did not assert that Appellee was not injured, but defended on the basis that he had fallen off his mother's roof while in Tennessee (even though there was no denial that Appellee had consulted Dr. Coleman before he even left for Tennessee).

### ISSUES SUBMITTED

To issues submitted, the jury found: (1) Plaintiff did receive an injury in the course of his employment, (2) the injury was not a producing cause of any total incapacity, but (3) the injury produced partial incapacity, (3A) the partial incapacity started September 12, 1986, and (3B) the partial incapacity was permanent. The jury also found (3C) that Appellee's average weekly earning capacity during the partial incapacity was $327.00 and (4) payment of compensation should not be made in a lump sum. We now get to the crucial issues involved in this appeal. The trial court submitted the following issues:

5. Do you find that the employer, M.F. Machen Construction Inc., had notice that Mr. Mathes received an injury *while in the course of his employment* within 30 days after its manifestation?

Notice to or actual knowledge on the part of a foreman or supervisor, or an agent designed [sic] by the employer to receive such "notice" to the employer.

The jury answered:    5. <u>NO</u>

The jury had already been asked in Issue No. One whether there was an injury in the course and scope of employment. The jury found there was an injury in the course and scope of employment. It is interesting to note that the 2 State Bar of Texas, Texas Pattern Jury Charges PJC 24.01 (1970) in regard to the notice issue does not repeat "course of employment", instead the notice issue is conditionally submitted on the finding of either total or partial incapacity.

In Section 20 of Article 8306, Tex.Rev. Civ.Stat.Ann, it states: "the date of the cumulative injury shall be the date disability was caused thereby." The jury found that the disability began November 12, 1986. This is the date, after his back operation, that the back surgeon determined a residual disability. However, the employer could have had notice in May 1986 that Appellee's initial problems had arisen in the workplace.

Appellee's pleadings alleged that his injury manifested itself on or about September 1, 1986. Tex.Rev.Civ.Stat.Ann. sec. 4a, art. 8307 (Vernon Supp.1989), in regard to notice, states:

[N]otice of the injury shall be given to the Association or subscriber within (30) thirty days after the happening of an injury *or the first distinct manifestation of an occupational disease....* [Emphasis added].

The purpose of notice is to give the insurer an opportunity to investigate, and the notice need not be given in any particular form. The notice does not have to specify the exact nature of the injury or illness. The employer needs only the general nature of the injury, and the fact that it is job related. *DeAnda v. Home Insurance Company,* 618 S.W.2d 529 (Tex.1980). Great liberality should be indulged in when determining the sufficiency and scope of notice. *Lewis v. American Surety Co.,* 143 Tex. 286, 184 S.W.2d 137 (1944).

Tex.Rev.Civ.Stat.Ann. sec. 20, art. 8306 (Vernon Supp.1989) defines injury, occupational diseases and ordinary diseases:

An "Occupational Disease" shall also include damage or harm to the physical structure of the body occurring as the

result of *repetitious physical traumatic* activities extending over a period of time and arising in the course of employment; provided, that *the date of the cumulative injury shall be the date disability was caused thereby.* [Emphasis added].

The evidence in this case showed that Appellee's employer was aware that Appellee was complaining of numbness in his legs and had seen Dr. Coleman. The employer was also aware that Dr. Coleman had taken X-rays. This happened before Appellee left for Tennessee. Unfortunately, Dr. Coleman could not find out what was wrong with Appellee who continued to work until he left on vacation. The jury found against the employer when it found that the Appellee had been injured in the course and scope of his employment.

THE REAL PROBLEM WITH THE NOTICE ISSUE SUBMITTED IS THAT IT DOES NOT GIVE THE JURY ANY GUIDANCE AS TO WHAT IS MEANT BY *MANIFESTATION, NOR DOES IT ASK THE JURY TO DETERMINE THE DATE OF THE FIRST MANIFESTATION OF THE APPELLEE'S BACK CONDITION.*

Considering all of the above leads us to recommend as well as make the following conclusions:

■ We suggest that in a repetitious trauma case, depending on the evidence when lack of notice is claimed, that the trial court conditionally submit the notice issue on the jury's finding of total or partial incapacity. Then the trial court should (in regard to the notice issue) submit for determination the following issue and instruction:

Find from a preponderance of the evidence the date of the first distinct manifestation of Mayford Mathes' back condition.

You are instructed that by first distinct manifestation is meant the time when a reasonable person, under the same and similar circumstances as Mayford Mathes would recognize the nature, seriousness, and work related nature of the injury.

Answer by stating the month, day, and year.

ANSWER: _____

Do you find from a preponderance of the evidence that the employer, M.F. Machen Construction, Inc., had notice of Mayford Mathes' injury within thirty days after the date of the first distinct manifestation of Mayford Mathes' back condition? Answer "Yes" or "No".

ANSWER: _____

If the above issue is answered "No" then the good cause issues should be submitted.

While a great deal of discretion is properly vested in the trial court in submitting issues broadly under Tex.R.Civ.P. 277, we believe, at a minimum, a definition of first distinct manifestation be given.

■ This brings us to the good cause issue that was submitted by the trial court. The trial court incorrectly worded this issue and the accompanying instruction, apparently using the good cause issues from Pattern Jury Charges, which relate to the filing of the claim with the Industrial Accident Board and not the giving of notice to the employer. The trial court's issue was:

6. Do you find that Plaintiff had good cause for delay in notifying his employer of his *INJURY* within thirty days of the date of injury? [The court should have stated, "within thirty days after the first distinct manifestation of Mayford Mathes' back condition and work related nature of the injury"].

No blank was provided for an answer as with the other issues. The jury answered, "No" after the issue.

The trial court then incorrectly, under such issue, gave instructions on good cause for failure to FILE A CLAIM and not good cause for failure to give notice:

A person has "good cause" for delay in filing a CLAIM [this is incorrect and should have said in "failing to give notice"] when he has prosecuted his CLAIM [this is incorrect and it should have said, "when he gave notice"] with such diligence as an ordinary prudent person would have used under the same or similar circumstances. In determining

"good cause", you may consider the following factors, if any and no other:

(a) whether plaintiff believed his injury was trivial, or

(b) whether plaintiff believed or had reason to believe before the time of filing of the claim that the injury was work related. [Should have stated, "any notice to the employer was received"].

We find the trial court's charge neither properly submitted the notice issue, nor did the trial court properly apply the law to the facts in its instructions on notice and good cause. We also find these were Appellee's issues, and the record before us does not indicate that Appellee made any objections to these issues as submitted. Therefore, Appellee has waived any error as to the incorrectness of the issues and instructions. Tex.R.Civ.P. 278. We next decide whether the trial court erred in disregarding the jury's answers to the notice and good cause issues. *In other words, was the employer on notice of Appellee's work related injury as a matter of law?*

■ This is not a case of when the Appellee gave notice to the employer or when the employer received or was charged with notice. Unfortunately in repetitious trauma and occupational disease cases, the question of notice seems to continually crop up with so little guidelines as to how to submit the issues and properly instruct the jury. It becomes difficult to handle repetitious trauma cases because the injured worker as well as employers are generally unaware of the compensability of such cases. We are aware of the liberality that should be used in favoring the interpretation of the compensation law and sometimes it is difficult to try and enforce the different sections as written, such as notice and good cause.

We are unable to find in the record where the employer received any notice of the work related nature of Appellee's incapacity or disability.

Appellee testified that when he saw the chiropractor in Tennessee in June, July and August he was pretty sure that his back problems were related to his work. Then Appellee testified:

Q. But you didn't call Machen or the insurance company about it?

A. No, sir.

.   .   .   .   .

Q. And when you were going to have the surgery, you did call Machen [his employer] and told them about the surgery?

A. That's right.

Q. But you didn't tell them it was related to your work?

.   .   .   .   .

A. I don't recall mentioning it, no.

.   .   .   .   .

Q. And to this day you haven't called anybody out at Machen and told anybody out there that it was related to your work, you yourself?

A. No, sir.

We, therefore, have a case where notice that Appellee's back condition was work related was simply not given to or received by the employer within thirty days of the date of the first manifestation of the back condition; nor that notice was given or received within thirty days after November 12, 1986, the date the jury found that partial incapacity commenced.

There is ample notice as to Appellee's "back condition" and treatment but, simply, no thirty day notice that the condition was *work related.*

The trial court erred in disregarding the jury's answers to the notice and good cause issues.

Appellant's Points of Error Nos. One and Two are sustained.

Appellee's Counterpoints of Error Nos. One, Two, Three and Four are overruled.

The judgment of the trial court is reversed, and judgment is rendered for Appellant.